# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| BRENT GOOD,<br><br>    Plaintiff,<br><br>vs.<br><br>DONAVAN SKIFSTAD and PROGRESSIVE UNIVERSAL INSURANCE COMPANY,<br><br>    Defendants. | CV 18-80-BU-BMM<br><br><br><br>**ORDER** |

    Plaintiff Brent Good initially filed his complaint in Montana State District Court, Lewis and Clark County, against Defendants Donovan Skifstad, State of Montana Department of Transportation ("MDT"), Travelers Property Casualty Company of America ("Travelers"), and Progressive Universal Insurance Company ("Progressive") on June 6, 2018. (Doc. 1-2.) Good filed a Montana Rule of Civil Procedure 41(a)(1)(A)(ii) Voluntary Dismissal with Prejudice as to MDT on December 13, 2018. (Doc. 1-2 at 47-48.) Skifstad removed the instant case to this Court based on diversity jurisdiction on December 26, 2018. (Doc. 1.) Good dismissed with prejudice his claims against Travelers pursuant to Federal Rule of Civil Procedure 41(a)(i)(A)(ii) on April 15, 2019. (Doc. 42.)

1

The Court conducted a hearing on Good's First Motion in Limine (Doc. 14) and on Progressive's Motion for Summary Judgment (Doc. 34) on April 17, 2019. (Doc. 43.) The Court requested supplemental briefing after the hearing on whether the term release as defined in *Sperry v. Montana State University*, 778 P.2d 895 (Mont. 1989), applies to the term release as used in Montana Code Annotated § 25-1-703. (Doc. 44.) The parties timely filed their supplemental briefs on April 25, 2019. (Docs. 45, 46.) The Court will address in turn Good's Motion in Limine, with the requested supplemental briefs, and Progressive's Motion for Summary Judgment.

## I. Motion in Limine

All of the parties who have appeared in the instant matter agreed to Good's dismissal with prejudice of his claims against MDT in compliance with Montana Rule of Civil Procedure 41(a)(1)(A)(ii). (Doc. 1-2 at 47-48.) Good requests that this Court prevent Defendants Skifstad and Progressive (collectively "Defendants") from introducing any evidence and/or argument with regard to any liability for the accident that may be attributed to MDT's planning, design, and/or construction of the intersection of Harrison Avenue and Sampson Avenue in Butte, Montana. (Doc. 15 at 7.)

Good cites to Montana Code Annotated § 27-1-703, and the Eleventh Amendment, in support of his motion. Private citizens remain precluded from

suing a state in federal court absent the state's consent. U.S. Const. amend. XI. Skifstad does not seek to sue MDT. Skifstad seeks to use "evidence related to MDT's planning, design, and/or construction of the intersection" to support his defense that MDT's alleged negligence constitutes an intervening superseding cause. (Doc. 29 at 2.) The Eleventh Amendment has no bearing on Skifstad's effort to introduce such evidence.

Section 27-1-703 governs the determination of liability in cases involving multiple defendants. "In an action based on negligence, a defendant may assert as a defense that the damages were caused in full or in part by a person with whom the claimant has settled or whom the claimant has released from liability." Mont. Code Ann. § 27-1-703(6)(a). Section 27-1-703(6)(c) generally prohibits comparison of fault with: "(i) a person who is immune from liability to the claimant; (ii) a person who is not subject to the jurisdiction of the court; or (iii) any other person who could have been, but was not, named as a third party." These general requirements fail to apply, however, to "persons who have settled with or have been released by the claimant." Mont. Code Ann. § 27-1-703(6)(c).

Whether a dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) constitutes a release for purposes of Montana Code Annotated § 27-1-703 stands at the crux of the instant motion to limine. Good contends that there exists "[e]stablished authority from numerous other jurisdictions" that support that a stipulation of

3

dismissal pursuant to Rule 41(a)(1)(A)(ii) does not constitute a "release" under § 27-1-703. (Doc. 30 at 5.) Good's numerous established authorities include a 1937 case from the Alabama Supreme Court and a 2004 case from the Kentucky Court of Appeals. *Id*. The Court declines to rely on these decisions from faraway jurisdictions absent extreme circumstances. Extreme circumstances fail to exist in this case in light of the Montana Supreme Court's articulation of release in *Sperry*.

The issue before the Montana Supreme Court in *Sperry* was whether Sperry's retirement agreement with Montana State University ("MSU") constituted a complete waiver and release of the claims that he had raised before the district court. *Sperry*, 778 P.2d at 897. Sperry, a retired MSU employee, alleged that MSU owed him additional compensation as a result of a contract conversion for employees that had taken place at MSU in 1967. *Id*. at 896.

MSU employed Sperry as Director of Continuing Education from 1965 through March 31, 1986. *Id*. The "Montana 12 Contract" governed Sperry's employment with MSU from 1965 to 1967. *Id*. The Montana 12 Contract permitted MSU employees "to take an eighth quarter leave with pay for research, travel or any other reason approved by the Board of Regents." *Id*. MSU employees were "required to work seven quarters before eligibility for the eighth quarter leave accrued." *Id*.

MSU converted all Montana 12 Contracts to one-year employment contracts in 1967. *Id*. Sperry signed an agreement in which he acknowledged and accepted that with the contract conversion all of Sperry's accumulated eighth quarter leave had been taken, and that Sperry had waived claim to any future eighth quarter leave. *Id*. Sperry signed nineteen individual annual employment contracts with MSU from 1967 through 1986, none of which mentioned conversion compensation. *Id*. Sperry, in his retirement agreement with MSU, agreed not to pursue any past wage grievances. *Id*. at 897.

The Montana Supreme Court explained that release refers to the "abandonment of a claim to the party against whom it exists and *may* be gratuitous or for consideration." *Id*. (emphasis added). A release proves effective when it includes words that "show an intention to discharge." *Id*. (citation omitted). A release proves enforceable if it is "unambiguous, explicit, and unequivocal." *Id.* (citation omitted). Sperry signed nineteen individual one-year employment contracts, cashed paychecks from 1967 through 1986, and accepted the retirement agreement with MSU without raising any objection regarding conversion compensation that Sperry allegedly was due. *Id*. at 898-99. Sperry's acquiescence without objection constituted a complete waiver and release of his claim for conversion compensation. *Id*. at 898.

Good argues in line with *Sperry* that a release constitutes a contract. As a result, Good contends that the Rule 41(a)(1)(A)(ii) stipulation of dismissal does not constitute a valid release, as contemplated by Montana Code Annotated § 27-1-703, because the stipulation was not supported by valuable consideration. (Doc. 45 at 2.) *Sperry* admittedly failed to clarify that a release constitutes a contract insofar as a party may seek to rescind the release through defenses available under contract law. *Westfall*, 374 P.2d at 98. A release becomes a contract's fraternal twin, however, when it comes to a release's formation as consideration—a necessity to forming a valid contract—need not support a valid release. *See Westfall v. Motors Ins. Corp.*, 374 P.2d 96, 98 (Mont. 1962); *Sperry*, 778 P.2d at 898. No party seeks to rescind Good's Rule 41(a)(1)(A)(ii) stipulation of dismissal with prejudice of MDT. Good's argument that his Rule 41(a)(1)(A)(ii) stipulation fails to constitute a release of MDT because there was no valid consideration fails.

*Sperry* admittedly did not address whether a stipulation of dismissal without prejudice constitutes a release for purposes of § 27-1-703. The reasoning in *Sperry* nonetheless applies. Good's Rule 41(a)(1)(A)(ii) Voluntary Dismissal with Prejudice as to MDT constituted a release pursuant to Section 27-1-703. Montana Rule of Civil Procedure 41(a)(1)(A)(ii) permits a plaintiff, without a court order, to dismiss an action by filing a stipulation of dismissal signed by all parties who have appeared in the action. Good chose to raise a cause of action for negligent planning

and design against MDT. (Doc. 1-2 at ¶¶ 8-15.) Good then elected to dismiss with prejudice his claim against MDT as Good determined that there exists "no way to prove that MDT's alleged negligence in planning and designing the intersection caused the accident, particularly where Defendant Skifstad has admitted he was negligent in causing the collision." (Docs. 1-2 at 47-48; 15-2.)

Similar to Sperry and MSU entering into an agreement in which Sperry forfeited his ability to pursue any past wage grievances, Good entered into a stipulation of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) with all of the parties in which Good agree to forfeit his claim against MDT. This agreement bars Good from bring an action against MDT on the same claim. Good abandoned his claims against MDT. *See Sperry*, 778 P.2d at 898. The record remains unclear as to whether Good's abandonment of his claims against MDT was gratuitous or for consideration. Montana law recognizes a valid release under either alternative. *Sperry*, 778 P.2d at 898.

MDT stands as a party released from this action for purposes of § 27-1-703(6)(c). As a result, § 27-1-703(6)(c), authorizes Skifstad, upon satisfying the requirements found in § 27-1-703(6)(e), to compare his individual fault with MDT's alleged negligent design and planning of the Harrison Avenue and Sampson Avenue intersection. Good's First Motion in Limine must be denied.

## II. Motion for Summary Judgment

Good asserts a claim against Progressive for uninsured motorist and medical payment benefits under his first-party coverage. (Doc. 1-2 at ¶¶ 27-36.) Good's policy with Progressive provides that the insured seeking coverage under the policy must submit to an IME at Progressive's request. (Doc. 38-1 at 27.) Progressive requested on February 20, 2019, that Good submit to an IME with Dr. Emily Heid in Missoula. (Doc. 35 at 2.) Good refused to comply with Progressive's request. *Id*. Progressive seeks summary judgment in its favor due to Good's failure to comply with the provisions of his insurance policy. *Id*. at 5.

A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a). If no genuine dispute of material fact exists, then summary judgment is proper, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court will grant summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The parties do not raise any genuine issues of material fact. The Court sees none. The sole question of whether Progressive proves entitled to judgment as a matter of law remains.

The interpretation of an insurance contract presents a question of law. *American States Ins. Co. v. Flathead Janitorial & Rug Services, Inc*, 355 P.3d 735, 737 (Mont. 2015) (citation omitted). The freedom to contract stands at the bedrock of

contract law. *Winter v. State Farm Mut. Auto. Ins. Co.*, 328 P.3d 665, 674 (Mont. 2014) (citation omitted). Parties remain "free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws." *Id*.

"The Court may not rewrite contracts, but must enforce them as written if their language is clear and explicit." *American States Ins. Co.*, 355 P.3d at 738 (citation omitted). The Court will enforce unambiguous insurance provisions "unless the provision violates public policy or is against good morals." *Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 868 (Mont. 2013) (citation omitted). The statutes enacted by the Montana Legislature generally establish Montana's public policy. *Id*. "Insurance provisions which violate express statutes are contrary to public policy and void." *Id*. (internal quotations and citation omitted).

Montana Rule of Civil Procedure 35 authorizes a moving party to obtain evidence of a non-moving party's physical or mental condition pursuant to a court order. The Court may "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Mont. R. Civ. P. 35(a)(1). The order "may be made only on motion for good cause and on notice to all parties and the person to be examined; and must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Mont. R. Civ.

P. 35(a)(2). Rule 35 constitutes Montana public policy. *See Fisher ex rel. McCartney*, ¶ 25 (citation omitted).

Good contends, without any supporting authority, that "Montana law is abundantly clear . . . [that] Progressive must still satisfy the 'good cause' requirement under Rule 35 in order to force" Good to undergo an IME. (Doc. 37 at 4.) Montana law proves clear that an insurance company that moves pursuant to Rule 35 to require a plaintiff to submit to an IME must satisfy Rule 35's requirements. *See Lewis v. Montana Eighth Judicial Dist. Court*, 286 P.3d 577, 578, 579 (Mont. 2012). Progressive did not move pursuant to Rule 35 to have Good submit to an IME. Progressive simply sought to enforce the provision of its insurance policy to which Good agreed. (Doc. 38-1 at 27.)

The question turns then on whether the IME requirement in Progressive's insurance policy violates Montana's public policy. Rule 35 permits the Court, upon a showing of good cause, to require a party to submit to an IME. Mont. R. Civ. P. 35(a)(2). Rule 35 essentially acts as a mechanism for those who seek to have a party submit to an IME that fail to have other avenues available for such a request. *See Henricksen v. State*, 84 P.3d 38, 50-51 (Mont. 2004). The Montana Supreme Court recognized that the State's request for an IME pursuant to Rule 35 proved appropriate as the plaintiff mother planned to base her damages on a past diagnosis of post traumatic stress disorder. *Id*. A first party provision to an insurance contract

that requires the insured to submit to an IME does not contradict Rule 35. *See Fisher ex rel. McCartney*, ¶ 25 (citation omitted). Good's insurance policy with Progressive does not violate Montana's public policy.

Good's failure to appear for the IME in violation of the terms of his insurance policy proves detrimental to his claim against Progressive. Good's insurance policy with Progressive states that "[a] person seeking coverage must . . . submit to medical examinations at our expense by doctors we select as often as we may reasonably require." (Doc. 38-1 at 27.) The policy language remains clear. Good undergoing an IME, at the request of Progressive, serves as a prerequisite to Good receiving coverage from Progressive pursuant to Good's insurance policy.

Good's failure to appear for the IME constituted a breach of his insurance policy. "[A] party committing a substantial breach of a contract cannot maintain an action against the other contracting party. . .." *Rogers v. Relyea*, 601 P.2d 37, 41 (Mont. 1979). The only question that remains then is whether Good's refusal to appear for an IME constitutes a material breach of the contract that would allow Progressive to rescind the contract. *See Davidson v. Barstad*, 435 P.3d 640, 646 (Mont. 2019). Neither party addressed in its brief whether Good's refusal to appear for an IME rises to the level of a material breach. The Court deems it appropriate under there circumstances for the parties to submit supplemental briefing confined solely to this issue.

Accordingly, IT IS ORDERED:

1. Good's First Motion in Limine (Doc. 14) is DENIED.

2. Progressive's Motion for Summary Judgment (Doc. 34) is HELD IN ABEYANCE. Each party shall submit a supplemental brief not to exceed 1,500 words within 10 days of this Court's Order that addresses the sole remaining issue of whether Good has committed a material breach of his insurance contract with Progressive.

DATED this 12th day of June, 2019.

Brian Morris
United States District Court Judge